**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x

HUI LUO

                    Plaintiff,

      -against-

L&S ACUPUNCTURE, P.C., AMERICAN ASIAN
ACUPUNCTURE, PLLC, and
GUOXI LIU,

                Defendants.

-----------------------------------------------------------------x

**CASE NO.: 1:14-cv-01003**

**DEFENDANTS' POST
TRIAL BRIEF**


# DEFENDANTS' POST TRIAL BRIEF

# TABLE OF CONTENTS

TABLE OF CONTENTS…………………………………………………………..2

TABLE OF AUTHORITIES …………………………………………………..…..4

INTRODUCTION …………………………………………………………………5

ARGUMENTS ………………………………………………………………….....5

    I.    REGARDING PLAINTIFF'S FIRST CLAIM FOR RELIEF (FLSA Overtime Violations, 29 U.S.C. § 201 et seq.) ………………………………..5

        A. Plaintiff Qualifies Under the Professional Exemption of FLSA

        i.  Requirements of the FLSA professional exemption……………5

        ii.  Plaintiff meets the *advanced knowledge* and *primary duty* tests in the FLSA professional exemption. ……………………6

        iii. Plaintiff meets the salary test in the FLSA professional exemption……………………………. ………………..7

        B. Plaintiff Failed to Establish that She Worked More Than 40 Hours During the Week. …………………………………….8

        i.  Burden of Proof ………………………………. ……………8

        ii.  Plaintiff's working hours could not exceed the clinics' operation hours. ……………………………. ……………………9

        iii. Plaintiff avoided using the clocking machines and submitted fraudulent timesheets. ……………………………. …10

        iv. Plaintiff's self-claimed overtime work did not get authorization from the Defendant and it is against Defendants' employment policy. ……………………………. ……12

    II.    REGARDING PLAINTFF'S SECOND CLAIM FOR RELIEF (New York State Overtime Violations, NYLL § 650 et seq., New York Codes Rules and Regulations, 12 NYCRR § 142-2.2) …………………………………13

        A. Plaintiff Qualifies Under the Professional Exemption of NYCRR……………………………………………………..14

        B. Plaintiff Failed to Establish that She Worked More Than 40 Hours During the Week……………………………………14

    III.   REGARDING PLAINTIFF'S THIRD CLAIM FOR RELIEF (New York State Spread of Hours Violation, NYLL § 650 et seq., New York Codes Rules and Regulations, NYCRR § 142-2.4) …………………………………15

        A. Plaintiff failed to establish that she worked spread of hours exceeding ten (10) hours. …………………………………15

    IV.  REGARDING PLAINTIFF'S FOURTH CLAIM FOR RELIEF (New York State Unpaid Wage Violation, NYLL § 190, Breach of Employment Agreement: Failure to Pay Agreed upon Wages) …………………………15

        A. No Valid Employment Agreement Existed Between Plaintiff and Defendants. …………………………………………………16

        B. No Valid H-1B Petition for Plaintiff Existed. ………………17

    i.  After Plaintiff refused to sign the employment agreement with the Defendant L&S Acupuncture P.C.,the H-1B Petition was made by Plaintiff alone without Defendants' knowledge. ………………………………. ……………..17

    ii.  Plaintiff failed to prove that Defendant Guoxi Liu's signed on the complete H-1B petition. ……………………………18

    C. The partnership agreement showed that Defendants never intended to file the H-1B Petition for Plaintiff…………….19

V.    REGARDING PLAINTIFF'S FIFTH CLAIM FOR RELIEF (Breach of Employment Agreement: Failure to Provide Employee Benefits)

    A. No Valid Employment Agreement Existed Between Defendant and Plaintiff for the Claim to Stand. …………………………21

VI.    REGARDING PLAINTFF'S SIXTH AND SEVENTH CLAIM FOR RELIEF (Quantum Meruit and Unjust Enrichment) …………………… 21

    A. Defendants have paid Plaintiff for All Services Rendered…………………………………………………………21

    B. Defendants was not enriched, rather, suffered economic and reputation losses because of Plaintiff's poor performance in her work. ……………………………… ………………………21

VII. REGARDING PLAINTIFF'S EIGHTH AND NINTH CLAIM FOR RELIEF (Written Statement to Employee, 12 NYCRR §§ 142-2.7, New York State Record Keeping Requirements, 12 NYCRR § 142-2.6; NYLL § 195) ………………………………………………………..............22

    A. Defendants Had Maintained Adequate Records for Plaintiff…..………………………………………………22

CONCLUSION………………………………………………………….......23

# TABLE OF AUTHORITIES

**CASES**

*Anderson v. Mt. Clemens Pottery Co*., 328 U.S. 680, 687
(1946) ………………………………………………………………………8

*Doo Nam Yang v. ACBL Corp.*, 427 F.Supp.2d
(S.D.N.Y.2005) …………………………………………………………………8

*Grochowski v. Phoenix Constr.*, 318 F.3d (2d Cir.
2003) ………………………………………………………………………13

*Joseph Daniels v. 1710 Realty LLC*, No. 11-3674 (2nd Cir.
2012) ………………………………………………………………...12, 18

*Kolesnikow v. Hudson Valley Hosp. Ctr.*, 622 F. Supp. 2d (S.D.N.Y.
2009) ……………………………………………………………………8, 12

*Park v. Seoul Broadcasting Sys*. Co., No. 05-Civ.-8956 (BSJ), 2008 WL 619034
(S.D.N.Y. March 6, 2008) …………………………………………………..8

*Reich v. S. New England Telecomm. Corp*., 121 F.3d (2d Cir.
1997) ……………………………………………………………………..8

*Rivera v. Ndola Pharmacy Corp*., 497 F. Supp. 2d 381, 388 (E.D.N.Y.
2007) ……………………………………………………………………..8

**STATUTES**

29 CFR § 541.301 (e)(1) ………………………………………………...5, 6, 7

12 N.Y.C.R.R. § 142-2.14(c)(4)(iii) ……………………………………………14

29 U.S.C.§ 211(c) ……………………………………………………………22

N.Y. Lab. Law §§ 195(4) …………………………………………………………22

8 CFR 214.2(h)(2)(i)(e) ………………………………………………………20

29 C.F.R. §§ 516.2 ……………………………………………………………..22

N.Y. Comp. Codes R. & Regs. tit. 12, §§ 137-2.1-2.2. …………………………...22

## **INTRODUCTION**

Defendant L&S Acupuncture P.C. ("L&S"), American Asian, PLLC and Guoxi Liu, through counsel ML and CHEN, P.C., submit their post-trial brief following the Court's September 19, 22, 30 and October 8 bench trial on Plaintiff's claims under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), the New York Labor Law § 650 et seq., ("NYLL") and New York's Codes, Rules and Regulations §§ 142 ("NYCRR").

For the reasons stated below, Plaintiff failed to provide sufficient evidence that the Defendants violated FLSA 29 U.S.C. § 201 et seq., or NYLL § 650 et seq., or NYCRR §§ 142. Accordingly, the Court should enter judgment for Defendants.

## **ARGUMENTS**

### **I.  REGARDING PLAINTIFF'S FIRST CLAIM FOR RELIEF**
### **FLSA Overtime Violations, 29 U.S.C. § 201 *et seq.***

### **A.  Plaintiff Qualifies Under the Professional Exemption of FLSA**

i.   Requirements of the FLSA professional exemption

The Fair Labor Standards Act (FLSA) requires that most employees in the United States be paid at least the federal minimum wage for all hours worked and overtime pay at time and one-half the regular rate of pay for all hours worked over 40 hours in a workweek. However, Section 13(a)(1) of the FLSA provides an exemption from both minimum wage and overtime pay for bona fide professional employees. 29 CFR § 541.

According to the Learned Professionals exemption provided in 29 CFR **§** 541.301 (e)(1), registered or certified medical technologists who have successfully completed three academic years of pre-professional study in an accredited college or university plus a fourth year of professional course work in a school of medical technology approved by the Council of Medical Education of the American Medical Association generally meet the duties requirements for the exemption. *Id.*

Moreover, all of the following tests must be met for an employee to qualify for the learned professional employee exemption: (1) The employee's primary duty must be the performance of work requiring advanced knowledge, defined as work which is predominantly intellectual in character and which includes work requiring the consistent exercise of discretion and judgment; (2) The advanced knowledge must be in a field of science or learning; (3) The advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction; (4) The employee must earn a salary of at least $455 per week or $910 biweekly or $1971.66 monthly or $23,660 annually. *Id.*

    ii.   <u>Plaintiff meets the *advanced knowledge* and *primary duty* tests in the FLSA professional exemption.</u>

Here, Plaintiff has a bachelor's degree in a Chinese university where her major was Chinese medicine, which includes acupuncture. (Hui Luo deposition 6/23/14 page 15 lines 5-14). Plaintiff is also a licensed acupuncturist in New York State via educational credit fulfilment. (See Defendants' Exhibit 9, PT 185). Considering the education requirements for licensure as an acupuncturist in New York[1], by possessing the New York license to practice acupuncture, Plaintiff apparently satisfied the academic and advanced knowledge requirements provided in 29 CFR § 541.301 (e)(1).

Regarding the primary duty test, Plaintiff's work duties included making a diagnosis and prescribing and performing the treatment when working. (See Hui Luo deposition 6/23/14 page146, lines 2-12) She is an independent diagnostic professional. (Guoxi Liu testimony, Tr. page 159 line 14 & page 171 line 6-8) Moreover, Plaintiff

---

[1] To satisfy the education requirements for licensure as an acupuncturist in New York, one must present evidence of (1) Pre-professional College/University Education, with satisfactory completion of at least 60 semester hours at an accredited college or university, including nine semester hours in the biosciences; and (2) Professional Acupuncture Education, with satisfactory completion of an approved professional acupuncture program registered by the New York State Education Department as licensure qualifying or accredited by the Accreditation Commission for Acupuncture and Oriental Medicine (ACAOM) or another accrediting agency accepted by the Department as a reliable authority, or the equivalent. (See Title 8, Article 160, Section 8214 of New York's Education Law and Parts 52.16 and Subpart 79-2 of the Commissioner's Regulations).

was certified by the agency NCCLN that oversee acupuncture and oriental medicine. (Hui Luo testimony Tr. page 41 lines 14-18).

   iii.   <u>Plaintiff meets the salary test in the FLSA professional exemption</u>

FLSA professional exemption requires that the exempt employee must earn a salary of at least $455 per week or $910 biweekly or $1971.66 monthly or $23,660 annually. 29 CFR § 541. Here, Plaintiff also meets this salary test, as stated below. (See PT 102-138)

Plaintiff's compensation varied among different periods of time from 2010 through 2013, as stated below.

In the year 2010, Defendants' payroll record (PT 102-107) indicated that Defendants paid Plaintiff $9000.00 in the year 2010 through W-2, for the months August through December when Plaintiff worked. Plaintiff further testified that Defendants did not owe Plaintiff any money in the year 2010. (Hui Luo deposition 6/23/14 page 78, lines 8-15, & page 102 lines 9-20).

In the year 2011, according to Plaintiff's 2011 W-2 form (PT 108), Defendants paid Plaintiff in the total amount of $40,010.00 through W-2 for the year 2011. This is consistent with Plaintiff's testimony that she got a payment for each month in the year 2011. (Hui Luo deposition 6/23/14 page 64 lines 18-25, page 77 lines 6-8, page 90 line 22 - page 91 line 7).

In the year 2012, according to Defendants' 2012 payroll record (PT 123) Defendants paid Plaintiff $21,514.00 through W-2 in the year 2012. (PT 122-135).

In the year 2013 Defendants paid Plaintiff $3,496.00 through W-2 for the month January alone. (PT 136-138).

Plaintiff's W-2 forms and payrolls from 2010 through 2013 clearly show that Plaintiff's compensation has never been under the salary threshold for the FLSA exemption (PT 102-137).

In sum, Plaintiff meets the requirements in the Learned Professional category provided in 29 CFR § 541.301 (e)(1), is exempt from the FLSA overtime regulations, and Defendants are not required to pay any overtime to Plaintiff.

**B.  Plaintiff failed to establish that she worked more than 40 hours in any given week.**

In the event the Court does not recognize the Learned Professional Exemption stated in Point A above, Plaintiff has nevertheless failed to provided sufficient evidence that she worked more than 40 hours during the week.

i.  Burden of Proof

Under the FLSA, an employee "has the burden of proving that he performed work for which he was not properly compensated." *Rivera v. Ndola Pharmacy Corp*., 497 F. Supp. 2d 381, 388 (E.D.N.Y. 2007) (quoting *Anderson v. Mt. Clemens Pottery Co*., 328 U.S. 680, 687 (1946)); *Doo Nam Yang v. ACBL Corp.,* 427 F.Supp.2d 327, 331 (S.D.N.Y.2005). "When the employer has kept proper and accurate records, the employee may easily discharge his burden by securing the production of those records." *Anderson*, 328 U.S. at 687. When no such records exist, the employee may meet this burden if he proves that he has in fact performed work for which he was improperly compensated. *Id.*

In order to meet this burden, Plaintiff must produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Id. (emphasis added). An employee should not speculate, but can rely solely on his own recollections to meet this initial burden, *Park v. Seoul Broadcasting Sys. Co.,* No. 05-Civ.-8956 (BSJ), 2008 WL 619034, at *8 (S.D.N.Y. March 6, 2008), and if the trial court finds the testimony credible, it can award damages based on an approximation of the employee's loss. See *Reich v. S. New England Telecomm. Corp., 121 F.3d 58, 67 (2d Cir. 1997)*. If Plaintiff meets this burden, "the burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Kolesnikow v. Hudson Valley Hosp. Ctr., 622 F. Supp. 2d 98, 118 (S.D.N.Y. 2009)*. Although the "just and reasonable inference" often carries the day for an FLSA-plaintiff, it does not do so here for the following reasons.

8

ii.   Plaintiff's working hours could not exceed the clinics' operation hours.

Every acupuncturist who worked for Defendant L&S was required to clock in or out, and there was a formal timekeeping system. Defendant Guoxi Liu required her employees to clock in, clock out and complete the time sheet every day and fax the time sheets to her office every month. (Tr. page 154)

At the time the employment started when Plaintiff had a J-2 visa, Defendant Guoxi Liu told Plaintiff that the working hours would be the same as the operational hours of the clinic that she was going to work. (Tr. page 9 line 22- page 10 line 5)

Plaintiff stated in the Complaint that in weeks she worked over forty hours, she would work up to 13.50 hours over forty (40) hours per work week. (Paragraph 35 in Plaintiff's Complaint) This would mean that she worked approximately up to 53.5 hours per week. The complaint also stated that Plaintiff was required to work six days each week: either Monday through Saturday or Monday through Sunday, except Saturday. (Plaintiff's Complaint, paragraph 29) However, this is inconsistent with her own created timesheets and her own testimony.

Among all timesheets Plaintiff herself provided, almost none of those timesheets showed that she had ever worked on either Saturday or Sunday. (See PT 005-013, PT 063-101, PT139-141)

Plaintiff had testified that the clinics that Defendant Guoxi Liu sent her to are usually open for five days a week. (See Hui Luo deposition 6/23/14 page 99, lines 7-12) Plaintiff also testified that the operation hours of the clinics that she worked would usually last from eight to nine hours. (Hui Luo testimony, Tr. at page 10, lines 17-23) She followed the business hours of the clinic she worked. None of the clinics required her to work overtime and she would leave the clinic when the clinic closed for the day. (See Id. page 142, line 24 - page 143 line 9) Plaintiff further testified that she *cannot* open the door to the clinic by herself if she arrived earlier before the clinic opens the door, and it is not possible for her to stay there after the clinic close the door. (See Id. page 97, lines 17-25)

Therefore, plaintiff would not be able to work longer than the operating

hours of the clinics, which would not last more than 9 hours a day. That being said, she would not likely be able to work more than 45 hours per week. If there were particular weeks when the clinic would be open for more than nine hours *and* she worked all of the open hours those weeks, there is no evidence in the record attesting to this.

Plaintiff also testified that sometimes she would be late because of the traffic condition, and sometimes she would go to the clinics earlier because she has to finish some patients. (See Hui Luo deposition 6/23/14 page 117, lines 14-18) This again conflicts with her own testimony that she cannot open the door to the clinic by herself if she arrived earlier before the clinic opens the door (See Id. page 97, lines 17-25)

iii.  <u>Plaintiff avoided using the clocking machines and submitted fraudulent timesheets.</u>

According to Defendant Guoxi Liu, she required Plaintiff to use the clocking machine every day to record her working times, but Plaintiff insisted on hand writing the hours herself and never used the clocking machine. Then Defendant Guoxi Liu asked Plaintiff to call Defendant using the office phones when Plaintiff arrives at the office to report Plaintiff's hours, which Plaintiff never did either. Plaintiff always submitted her time sheets on time, but the hours she put down were inaccurate. (Guoxi Liu testimony, Tr. page 158 line 6 – page 159 line 8) Defendant also stated that almost all the clinics had a clocking machine. (*Id.* At page 155 lines 10-17)

In the Contrary, Plaintiff stated that among all the clinics that she worked, only one had a clocking machine, and in that particular clinic, the receptionist would always be late. Before that receptionist came, Plaintiff would wait outside the clinic on the staircase. (Hui Luo deposition 6/23/14 page 134-135) However, Plaintiff did not show any other evidence to prove her statement. Furthermore, for reasons below, Plaintiff's own testimony is incredible and casts doubts on the veracity of her claims.

First, the odds that the only clinic that had a clocking machine happened to have a receptionist who tends to be late and would always be late is really low. According to Plaintiff, there was no single day that the receptionist arrived on time, so

she would never use the machine in the morning. Even though Plaintiff testified that another person Dr. K would always give her a ride and wait on the stairs outside the clinic with her, she failed to have Dr. K testify as a witness regarding this fact.

Second, even if the receptionist was always late, it would be inaccurate for Plaintiff to write that she started working, say 30 minutes before the receptionist arrived. As she testified herself, she was merely waiting outside and not working. (Hui Luo deposition 6/23/14 page 134-135)

Third, the inconsistency regarding how long that particular receptionist was late makes Plaintiff's testimony suspicious. She once testified that the receptionist would be late for 10 or 15 minutes. (Hui Luo testimony, Tr. page 73 lines 17-22); then she testified that the receptionist would always be late for 10 or 30 minutes. (*Id.* at page 83 lines 1-4); another time she stated that the receptionist was always late for *at least* 30 minutes. (See Hui Luo deposition 6/23/14page 134-135)

Fourth, Plaintiff's testimony that none of the clinics had a clocking machine except for one contradicts with Defendant Guoxi Liu's testimony that almost all the clinics had a clocking machine. Defendant's testimony regarding the clocking machine should be credible due to her knowledge of all the clinics she works with. She personally talked and contracted with all the clinics and would be in a much better position to know whether those clinics had any clocking machine.

Fifth, Defendant had planned to have several managing staff in different clinics where Plaintiff were assigned to work for to appear in front of the court to testify that Plaintiff frequently was late or left early, the clinics have clocking machines but Plaintiff refused to use, and Plaintiff was lack of basic English language to communicate with patients. However, due to Defendant's former lawyers' negligence, Plaintiff did not deposit them. Although the Court gave opportunity for the deposition in the later stage, Defendant could not afford the costs that will occur and had to give up the deposition opportunity. Failure to have Defendant's own witnesses to testify in front of the court does not prove anything, but at least Defendants have witnesses that could verify Defendant Guoxi Liu's testimony.

In addition, many of Plaintiff's self-made-up time sheets that Plaintiff

submitted do not make sense or unable to prove anything, casting doubt on the veracity of her claims. (PT 005-013, PT 063-101, PT 139-141)

For example, most of timesheets do not have a "year", such as PT 005, 008, 011, 063-100, only very few of them have a year and a date could possibly prove something but most of them cannot prove her work time in a reasonable way. Taking the number of working hours as recorded in the plaintiff-self-made-up timesheets as true, it is hard to find which given date, e.g., what date in which month of which year, a particular timesheet was for.   Most obviously, PT 179, which is the time sheet for 01/01/2013, Plaintiff recorded that the time she worked was from 12:00 am to 8:00 pm. We might assume that Plaintiff meant to put down 12:00 pm, but that time sheet was in any case apparently forged because the day 01/01/2013 was a New Year's Day and the clinic was not even open on that day.

After all, Plaintiff's assertions of the work she did and the times she worked are simply too vague and unsupported to afford relief. *Joseph Daniels v. 1710 Realty LLC*, No. 11-3674 (2nd Cir. 2012) (stating that the plaintiff's testimony regarding a third person's statement material to the case without any specificity as to how and where the third person told him is unconvincing). Plaintiff has not produced sufficient, credible evidence of the amount and extent of her work sufficient to award overtime pay as a matter of just and reasonable inference. *Kolesnikow v. Hudson Valley Hosp. Ctr.*, 622 F. Supp. 2d 98, 118 (S.D.N.Y. 2009) (stating that plaintiff's testimony that she worked an unspecified amount of time over forty hours, that she "sometimes" worked through her half-hour lunch break, and that she worked an unspecified amount of time past the end of her shift two or more times a week failed to provide a sufficient basis to infer that she worked more than forty hours in any given week).

iv.   Plaintiff's self-claimed overtime work did not get authorization from the Defendant and it is against Defendants' employment policy.

Defendant Guoxi Liu testified that Plaintiff needs get authorization for overtime work but Plaintiff never called for authorization on her alleged overtime work. (Guoxi Liu testimony, Tr. 159 lines 4-5) Also, Defendant L&S Acupuncture P.C.

has posted its bi-lingual *Working Regulations for Licensed Acupuncturists* in both English and Chinese on the wall for each clinic that it has worked with. No.3 rule of the regulations clearly provides that "Licensed acupuncturists are required to be punctual at work, must clock in attendance time. Without permission shall not work overtime. However, licensed acupuncturists need permission from his or her acupuncture supervisor before working overtime." (See PT 201, *Working Regulations for Licensed Acupuncturists*) However, Plaintiff never called for authorization on her alleged overtime work. (Guoxi Liu testimony, Tr. 159 lines 4-5)

In sum, the evidence suggests that Plaintiff's testimony that she worked overtime is unconvincing. She wrote the time sheets herself every day at work and there was no one supervising her as she put down the time. (See Hui Luo deposition 6/23/14 page 83 lines 1-6, page 86 lines 18-22). Even her own written time sheets proved in and among themselves not credible at all. She did not use the required clocking machine, which would have made the number of hours worked very evident. She claimed work overtime but never pursued and got any authorization as required by the Defendant's policy and rules. Plaintiff has not met her burden under the FLSA to demonstrate that she performed any work for which he was not properly compensated. *See Grochowski v. Phoenix Constr.*, 318 F.3d 80, 88-89 (2d Cir. 2003) (testimony that plaintiffs "'usually' worked" certain hours and did not know if they worked all Saturdays was "only speculation to establish what hours these plaintiffs worked"); *Kolesnikow*, 622 F. Supp. 2d at 118-19. Plaintiff's assertions of the work she did and the times she worked are simply too vague and unsupported to afford relief under the FLSA. *Id.*

## II.  REGARDING PLAINTFF'S SECOND CLAIM FOR RELIEF
### New York State Overtime Violations, NYLL § 650 *et seq.*
### New York Codes Rules and Regulations, 12 NYCRR § 142-2.2

Plaintiff alleged that Defendants willfully, regularly, and repeatedly failed to pay Plaintiff at the required overtime rate, one-and-one-half times her regular wage for hours worked in excess of forty (40) hours per workweek.

## A.  Plaintiff Qualifies Under the Professional Exemption of NYCRR

Under New York law, it is illegal for an employer to permit a non-exempt employee to work without paying overtime wages for all hours worked in excess of forty (40) hours in any workweek. NYLL § 650 *et seq.,* 12 NYCRR § 142-2.2.

However, like the FLSA, 12 N.Y.C.R.R. § 142-2.14(c)(4)(iii) has similarly provided a professional exemption. An exempt "professional" employee is defined as an employee: (a) whose primary duty consists of the performance of work: requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study, as distinguished from a general academic education and from an apprenticeship, and from training in the performance of routine mental, manual or physical processes; or original and creative in character in a recognized field of artistic endeavor (as opposed to work which can be produced by a person endowed with general manual or intellectual ability and training), and the result of which depends primarily on the invention, imagination or talent of the employee; and (b) whose work requires the consistent exercise of discretion and judgment in its performance; or (c) whose work is predominantly intellectual and varied in character (as opposed to routine mental, manual, mechanical or physical work) and is of such a character that the output produced or the result accomplished cannot be standardized in relation to a given period of time. 12 N.Y.C.R.R. § 142-2.14(c)(4)(iii).

Here, as previously stated in Argument I above, a reasonable conclusion can be drawn that Plaintiff meets the requirements in the professional exemption definition provided in 12 N.Y.C.R.R. § 142-2.14(c)(4)(iii) as well. (See supra Argument I, Point A)

Therefore, Plaintiff is exempt from the NYLL and 12 NYCRR overtime regulations, and Defendants are not required to pay any overtime to Plaintiff even if Plaintiff can establish some overtime hours.

## B.  Plaintiff Failed to Establish that She Worked More Than 40 Hours in any Given Week

As stated in Argument I above, Plaintiff Hui Luo has not produced sufficient,

credible evidence of the amount and extent of her work. Because Plaintiff failed to establish that she worked more than 40 hours in any given week, she was not eligible for overtime payment and she was properly compensated under NYLL and NYCRR.

### III.  REGARDING PLAINTIFF'S THIRD CLAIM FOR RELIEF
### New York State Spread of Hours Violation, NYLL § 650 *et seq.* and
### New York Codes Rules and Regulations, NYCRR § 142-2.4

**A.  Plaintiff failed to establish that she worked spread of hours exceeding ten (10) hours.**

Plaintiff is alleging that Defendants violated 12 NYCRR § 142-2.4 by failing to pay Plaintiff Hui Luo one extra hour's pay at the basic minimum hourly wage rate for each day the spread of hours work exceeded ten (10) hours.

As argued above in Argument I and II, the clinics that Plaintiff worked usually last from eight to nine hours. (Hui Luo testimony Tr. at page 10, lines 17-23) She followed the business hours of the clinic she worked. None of the clinics required her to work overtime and she would leave the clinic when the clinic is closed for the day. (See Id. page 142, line 24 - page 143 line 9) She cannot open the door to the clinic by herself if she arrived earlier before the clinic opens the door, and it is not possible for her to stay there after the clinic closes the door. (See Id. page 97, lines 17-25) Thus, Plaintiff would not be able to work longer than the operating hours of the clinics, which would not last more than 9 hours a day. That being said, she would not be able to work a spread of hours exceeding 10 hours per day.

Therefore, Plaintiff has failed to establish that she worked spread of hours exceeding ten (10) hours on any given day, and Defendants do not owe any NYLL spread of hours payment to Plaintiff.

### IV.  REGARDING PLAINTIFF'S FOURTH CLAIM FOR RELIEF
### New York State Unpaid Wage Violation, NYLL § 190, and
### Breach of Employment Agreement: Failure to Pay Agreed upon Wages

Plaintiff alleged that Defendants violated NYLL § 190 by failing to pay Plaintiff Hui Luo agreed upon wages for all hours worked, and that Defendants failed to pay Plaintiff an hourly wage of $30 and to provide standard employee benefits, as agreed, during the employment term from August 2010 to December 31, 2013. However, the evidence provided by Plaintiff failed to establish that (1) any employment agreement existed between Plaintiff and Defendant, and (2) any valid H-1B petition for Plaintiff existed.

**A.  No Valid Employment Agreement Existed Between Plaintiff and Defendants.**

With regard to the existence of a signed employment agreement between Plaintiff and Defendants, testimonies of several witnesses corroborated, proving that there is no valid Employment Agreement ever existed as explained below.

Plaintiff stated that attorney Jun Wang told her that before they file an H-1B petition, she had to sign the employment agreement. This agreement provided that if Plaintiff left during the application pendency for the H-1B, she would be penalized $100,000 dollars. (PT 059-060, see also Hui Luo deposition 6/23/14 page 67, line 22 - page 68, line 11) The agreement did not provide any specific stipulated compensation for Plaintiff. *Id.* Plaintiff did not sign the employment agreement because of the $100,000 penalty. (Hui Luo testimony, Tr. page 15, lines 14-19, see also Hui Luo deposition 6/23/14 page 66 lines 6-12)

Jun Wang also testified that he was not aware of any signed employment contract between L&S and Plaintiff Hui Luo. (Jun Wang testimony, Tr. page 139, lines 15-18)

Defendant Guoxi Liu also testified that Plaintiff never signed any employment agreement with her or L&S before the H-1B was filed.

For the foregoing evidence, the Court should find that the evidence provided leads to a reasonable conclusion that no valid employment agreement ever existed between Plaintiff and Defendants. Accordingly, there is no grounding in Plaintiff's claims regarding breach of the employment agreement.

**B.  No Valid H-1B Petition Ever Existed.**

Despite the absence of a valid employment agreement with Plaintiff, an H-1B petition with Defendant L&S Acupuncture P.C. as the petitioner and Plaintiff Hui Luo as the beneficiary was made to USCIS on or about December 30, 2010. Said Petition was later approved and was valid from February 02, 2011 to December 31, 2013.

i.    After Plaintiff refused to sign the employment agreement with the Defendant L&S Acupuncture P.C., the H-1B Petition was made by Plaintiff alone without Defendants' knowledge.

Defendant Guoxi Liu testified that she had told Plaintiff to go to attorney Jun Wang to sign the employment agreement. She talked with Jun Wang by phone about the employment agreement and expressly said that if Hui Luo doesn't sign the agreement then she cannot do the H-1B petition for her. (Guoxi Liu testimony, Tr. page 154 & page 180 lines 8-13)

This testimony is credible because it corroborates with the testimony of both Plaintiff and witness I. Ting Lin (also known as "Robert Lee"), as explained below.

As explained in Point A above, Plaintiff stated that attorney Jun Wang told her that before they file an H-1B petition, she had to sign the employment contract. (Hui Luo deposition 6/23/14 page 67, line 22 - page 68, line 11)

Witness I. Ting Lin also testified that he was requested to sign the employment agreement with Defendants before an H-1B petition can be filed for him. The employment agreement also included a penalty of $100,000. Lin later negotiated with Defendants and revised it to $20,000 (I Ting Lin testimony, Tr. page 93, lines 15-18 & page 105 lines 12-19) Lin signed the employment agreement with Defendants on 11/26/2010. (PT 357-359) Defendants later filed an H-1B petition for Lin (PT 253-298).

It can be inferred from the above that it was customary practice of Defendants that an employee be required to sign the employment agreement before an H-1B can be filed. Because Plaintiff Hui Luo did not sign, it would be inconsistent with Defendants' customary practice to file an H-1B for Plaintiff regardless.

Plaintiff alleged that Defendants filed an H-1B for her, even after she refused

to sign the employment agreement. When asked about when and how it happened, Plaintiff simply stated that "A week after I took the employment contract home and I refused to sign it, I was told to go back to work and the attorney will continue to help me to apply for H-1B visa." (Hui Luo testimony, Tr. page 18 lines 8-11)

Plaintiff did not testify with any specificity as to how and where Dr. Liu told her this, whether it was in person or on the telephone, or anything else that would lend any credibility whatsoever to Dr. Liu's purported statement. *Daniels v. 1710 Realty LLC*.

Another example on the record also shows that Plaintiff's testimony is incredible. Plaintiff testified that attorney Jun Wang emailed her the H-1B petition documents, and she printed out the documents and personally brought it to Dr. Liu to sign. She also did this twice because Jun Wang told Plaintiff that that application had been expired and she needed to print out another form to have Dr. Liu sign again. (Luo Hui testimony, Tr. page 19 line 18 - page 20 line 11) However, this is inconsistent with Attorney Jun Wang's testimony, which stated that Dr. Liu came to his office and he printed out all the necessary forms and Dr. Liu signed other documents in his office. (Jun Wang testimony, Tr. Page 8 lines 9-2, See PT 208-210)

Thus, it can be reasonably concluded that, without Plaintiff signing the employment agreement, Defendants never intended to or actually filed an H-1B petition for Plaintiff.

ii.   <u>Plaintiff failed to prove that Defendant Guoxi Liu's signed on the complete H-1B petition.</u>

According to Defendant Guoxi Liu, none of the signatures on the H-1B petition package, such as PT-213, PT-214, and PT-224 matched her signature. (Guoxi LIU testimony, Tr. Page 164 lines 7-25) She was only presented with the last page of the H-1B petition for her to sign. (PT 058, See also Guoxi Liu deposition, 6/4/14 page 57-59, Guoxi Liu deposition Tr. page 165 line 25 – page 51 line 13) It was in front of Plaintiff's home, and Plaintiff asked Defendant Guoxi Liu to sign the paper which she said was to allow Plaintiff to be able to get her J-2 status extended. Defendant Guoxi

Liu signed that one page and she was never aware that the page was for Plaintiff's H-1B petition. (GUOXI LIU testimony, Tr. at page 182 line 13 – page 183 line 20)

Plaintiff has not established anything to rebut Defendant's claim. Rather, Plaintiff has only established that Defendant in fact signed the page PT 058. This single page does not establish a complete H-1B petition and the page PT 058 contains no information showing that the package was an H1B package rather than a J-2 extension or some other immigration petition.

Moreover, because Plaintiff never indicated that the paper was an H-1B petition but stated that it was for J-2 extension, she willfully misled Defendant Guoxi Liu on her signature.

Therefore, Plaintiff has failed to establish a sufficient factual basis for the existence of a valid H-1B petition, and it leads to the conclusion that the prevailing wage of $30 per hour and the employee benefits stated in the H-1B petition has never been agreed upon.

## C. The Partnership Agreement showed that Defendants never intended to file the H-1B Petition for Plaintiff.

In May 2011, due to Plaintiff's poor performance and dishonesty at work, Defendant Guoxi Liu gave Plaintiff a written dismissal notice dated May 10, 2011. (PT 153) According to Defendant Guoxi Liu, Plaintiff called Defendant Guoxi Liu every morning at around five or six o'clock after the dismissal, begging Defendant Guoxi Liu not to fire her. (Guoxi Liu testimony Tr. page226 lines 3-14)

Defendant Guoxi Liu testified that on or around June 30, 2011, she signed a partnership agreement with Plaintiff, changing the compensation structure to give Plaintiff a 5% share of the profits. They signed the partnership agreement in Defendant Guoxi Liu's car in front of Plaintiff's home. Another doctor FENG-YU ZHAO was also in the car and witnessed that both Plaintiff and Defendant Guoxi Liu signed the partnership agreement. (GUOXI LIU testimony, Tr. page 234-236, see also ZHAO testimony Tr. at page 295-297) The signed partnership agreement was admitted by the Court as evidence. (PT181).

Defendant Guoxi Liu's testimony that a partnership agreement was signed between her and Plaintiff should be credible. An independent witness Feng-Yu Zhao can attest to the signed agreement. Plaintiff on the other hand, can produce no evidence to support her claim that she didn't sign the partnership agreement. (Hui Luo testimony Tr. page 27 lines 23 – page 28 line 6)

Moreover, Defendants signed such partnership agreements with almost identical terms with other acupuncturists as well, including Ying Duan, Ling Chu, Western Acupuncture, P.C. (PT 198 - 200) This shows that it is common practice for Defendants to sign such agreements with acupuncturists.

Due to the signed partnership agreement, Plaintiff's self-petitioned H-1B status was violated as of that date. Under 8 CFR 214.2(h)(2)(i)(e), the petitioner must amend the H-1B petition and accompany Labor Classification if there is any material change in the terms and conditions of employment that would affect Plaintiff's eligibility for H-1B status. Though Plaintiff's job duties concededly did not change, she was converted from an employee to essentially an independent agent with an ownership stake in the company. Additionally, her compensation formula was drastically changed so that it is now tied not to her own work but to the overall profits of the company.

The record shows that as of this change in formula, Plaintiff became certainly ineligible H-1B after signing the partnership agreement. These represent material changes in the terms and conditions of employment. Given that Defendant in fact desired to dismiss Plaintiff and provided written notice as to the reasons thereof (Tr. page 226, line 3-14), the change in compensation structure and the ensuing drastic drop in Plaintiff's income cast doubt on Defendant's continued desire to maintain Plaintiff's H1B status. Furthermore, despite the drop in income, Plaintiff cannot thereafter claim additional compensation if she in fact consented to the change in compensation structure by signing the partnership notice. She was under constructive notice that her income might drop depending on the fortunes of the company.

Therefore, because the partnership agreement brought material changes in the terms and conditions of employment, Plaintiff's H-1B status was violated as of

that date of the partnership agreement.

## V.   REGARDING PLAINTIFF'S FIFTH CLAIM FOR RELIEF
### Breach of Employment Agreement: Failure to Provide Employee Benefits

### A.  No Valid Employment Agreement Existed Between Defendant and Plaintiff for the Claim to Stand.

Plaintiff alleged that the employment agreement between Defendants and Plaintiff entitled Plaintiff to standard employee benefits.

As stated in the analysis for the Fourth Claim above, because Plaintiff never signed the employment agreement with Defendants, no valid employment agreement ever existed between Defendant and Plaintiff. Therefore, the employee benefits in the employment agreement do not apply and Plaintiff has failed to establish a factual base for this Fifth Claim for Relief.

## VI.  REGARDING PLAINTFF'S SIXTH AND SEVENTH CLAIM FOR RELIEF
### Quantum Meruit and Unjust Enrichment
### A.  Defendants have paid Plaintiff for All Services Rendered

Plaintiff Hui Luo alleged that she rendered her services as an acupuncturist pursuant to the employment agreement between her and Defendants. Those services were rendered to benefit Defendants with Defendants' knowledge, consent and authorization as evidenced by Defendants' signature on Plaintiff Luo's H1-B petition. Plaintiff alleged that Defendants have received substantial benefit for which they have not substantially compensated Plaintiff.

However, as stated in Argument I through IV above, Plaintiff has failed to establish that she worked any uncompensated overtime hours. There is no valid employment agreement stipulating any payments. The H-1B petition was filed without Defendants' knowledge nor authorization, and Defendants have in fact paid Plaintiff for all services rendered which complied with the FLSA and NYLL.

### B.  Defendants was not enriched, rather, suffered economic and reputation losses because of Plaintiff's poor performance in her work.

Defendant Guoxi Liu was not enriched from Plaintiff's service, instead, she lost several clinics because Plaintiff was unable to work on time, unable to communicate with patients or managing staff in the clinics, refused to work a little bit longer time as requested by the clinic. (Guoxi Liu testimony, Tr. 176-177) Because of Plaintiff's poor performance, Defendants had to dismiss Plaintiff as of May 10, 2011. (Guoxi Liu testimony, Tr. 176-177 and 224-226; also see PT 153)

In a short, Plaintiff was substantially compensated, and Defendants had not been unjustly enriched.

## VII.   REGARDING PLAINTIFF'S EIGHTH AND NINTH CLAIM FOR RELIEF
### Written Statement to Employee, 12 NYCRR §§ 142-2.7
### New York State Record Keeping Requirements
### 12 NYCRR § 142-2.6; NYLL § 195

### A.  Defendants Had Maintained Adequate Records.

Plaintiff Hui Luo alleged that Defendants willfully violated 12 NYCRR § 142-2.6 by failing to establish, maintain and keep weekly payroll records for not less than six (6) years.

Both the FLSA and the Labor Law require employers to keep detailed records of employee wages, tips, hours, and other employment information. See 29 U.S.C.§ 211(c); N.Y. Lab. Law §§ 195(4), 661. Specifically, employers must maintain records showing, inter alia, (1) total daily and weekly hours employees worked, (2) regular hourly rates of pay for each week in which overtime compensation is due, (3) total daily and weekly earnings, (4) total wages paid, (5) total weekly premium pay for overtime hours, and (6) dates of payment. See 29 C.F.R. §§ 516.2, .28; N.Y. Comp. Codes R. & Regs. tit. 12, §§ 137-2.1-2.2.

Here, L&S has clearly kept proper and accurate records and complied with the statutes above. The assortment of checks, pay stubs, tax returns, ledgers, and time records establish clearly that L&S maintained adequate records for all employees including Plaintiff. (See Defendants' Exhibit 1 – 9, PT 108 – PT 180)

Therefore, Plaintiff's 8th and 9th claims have no grounding in fact.

## **<u>CONCLUSION</u>**

For the foregoing reasons, judgment should be entered in favor of Defendants on Plaintiff Hui Luo's claims; and even if the Court decides in Plaintiff's favor, any and all claims against the defendant American Asian Acupuncture PLLC shall be dismissed in its entirety due to the fact that American Asian Acupuncture PLLC was never properly served, was never considered to be a party in the case (in the pretrial conferences and other- and else-where) and due to other reasons.


Dated: 10/29/2014
Flushing, Queens

Respectfully Submitted,

/s/ <u>Mingli Chen</u>
Mingli Chen, Esq.
ML and CHEN, P.C.
*Attorneys for Defendants*
136-79 Roosevelt Ave., Ste 303
Flushing, NY 11354
(718) 939-9000
(855) 462-2436 (fax)
mchen@mchenlaw.com