```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
HUI LUO,                                                    :
                                                            :
                              Plaintiff,                    :   **FINDINGS OF FACT AND**
                                                            :   **CONCLUSIONS OF LAW**
              - against -                                   :
                                                            :   14 Civ. 1003 (BMC)
                                                            :
L&S ACUPUNCTURE, P.C., AMERICAN                             :
ASIAN ACUPUNCTURE, PLLC, and                                :
GUOXI LIU,                                                  :
                                                            :
                              Defendants.                   :
                                                            :
----------------------------------------------------------- X
```

**COGAN,** District Judge.

This case was tried before me at a bench trial. Plaintiff seeks recovery for violations of the overtime and "spread of hours" provisions of the Fair Labor Standards Act ("FLSA") and related provisions of New York law.

Plaintiff's case relies entirely on a theory of recovery for which she offers no viable legal support and which is belied by the factual record developed at trial. Specifically, she seeks to recover unpaid wages, overtime, and spread-of-hours damages based on the contention that defendants' representation to the federal government about her wages on an H1-B visa application constitutes an enforceable promise. For reasons discussed below, that theory of recovery is not viable. Nevertheless, on the testimony and evidence put before me, I find that plaintiff's employment relationship with defendants was subject to the FLSA, and that her compensation did not conform to its mandate. I therefore conclude that plaintiff is entitled to at least some damages for unpaid overtime and spread-of-hours premiums.

## FINDINGS OF FACT

1. Plaintiff holds a professional license to practice acupuncture issued by the State of New York, and she is certified by the National Certification Commission for Acupuncture and Oriental Medicine ("NCCAOM"), which she testified is among the "highest agencies that oversee the [practice of] acupuncture and oriental medicine." She has a bachelor's degree majoring in Chinese medicine (also called oriental medicine), and earned her New York license through educational credit fulfillment. Plaintiff is not a medical doctor.

2. The parties have stipulated that defendant L&S Acupuncture, P.C. ("L&S") is a professional corporation engaged in interstate commerce that had gross sales in excess of $500,000 per year during the relevant period.

3. Defendant Liu owns and controls, and is responsible for hiring and firing employees of, defendant L&S. She is responsible for setting the wages, hours, and terms and conditions of employment for those employees. She also is responsible for maintaining employment records on behalf of L&S. Defendant Liu also owns and controls defendant Asian American Acupuncture, PLLC ("AAA").

4. Defendant Liu used both corporate entities interchangeably to manage her acupuncture business, including her employer-employee relationship with plaintiff.

5. Plaintiff was employed as an acupuncturist for defendants L&S and AAA from August 15, 2010 to December 31, 2013.

6. In early 2011, an H1-B visa application was filed on plaintiff's behalf, bearing defendant Liu's signature as petitioner and containing certain representations about plaintiff's employment with defendants. The circumstances under which this application was filed were

vigorously disputed at trial. As discussed below, I find that the disputed facts and circumstances of this petition are not material to plaintiff's FLSA claims, and I therefore will not resolve them.

7. The parties appear to agree that plaintiff's working hours generally were determined by the hours of the acupuncture clinic location to which she was assigned during a given week, and that this arrangement was understood from the beginning of plaintiff's employment. With some exceptions, plaintiff worked five days per week.

8. Throughout the relevant period, plaintiff was required to and did record her working hours on hand-written timesheets, which she would fax to defendant Liu each month. Copies of those timesheets, covering most but not all of the period of employment at issue in this case, were entered into evidence. I have reviewed those timesheets and credit their authenticity as contemporaneous self-made records of plaintiff's working hours. Plaintiff's testimony, even in light of defendants' efforts to impeach her, gave me no reason to doubt her honesty as a general matter. Other than vague accusations of improper inflation, I have been given no reason to believe that her self-made time records were inaccurate, intentionally or otherwise.

9. Defendants have not proffered evidence to rebut plaintiff's evidence of her working hours. Instead, they generally challenge plaintiff's credibility.

10. Based on plaintiff's own calculations, there is no evidence that plaintiff was being paid an hourly rate. Over three months in early 2011, for example, plaintiff was paid a steady monthly check in the amount of $3060.41, but logged hours (by her own calculation) totaling 161.75, 201, and 178.5, respectively. There is no evidence of additional payments that would have made the resulting hourly rate consistent across those three months. The same is true of almost any two given months during the time that plaintiff worked for defendants.

11.     Plaintiff's post-trial submissions contend that she has proven 56 hours of overtime worked during the period from August 2010 through January 2011.  However, the documentary evidence in the record reflects that plaintiff did not work any overtime in January 2011, and is devoid of any reference to the months of August 2010 through October 2010.   I therefore do not accept plaintiff's post-trial calculations relating to those months.  Plaintiff's documentary evidence shows only that she worked 15 hours of overtime during November 2010, and 11.5 hours of overtime during December 2010.  She worked 331.5 total hours, and was paid $4,000 (including taxes paid on her behalf).

12.     The records of plaintiff's pay from February 2011 through February 2012, with some exceptions, are generally in accord.  Plaintiff's contentions rely on documentary evidence in the form of cancelled checks, and defendants' contentions rely on their own payroll journals, apparently prepared by defendants' accountants for tax purposes.

13.     The parties appear to agree that from February 2011 through April 2011, plaintiff was paid $3060 each month net of taxes.[1]  The evidence also shows that during this period, defendants withheld and reported federal, state, and local income taxes on plaintiff's behalf.  Plaintiff's total compensation for this period (including taxes paid on her behalf) totaled $13,210.  By my calculation, which generally is consistent with that asserted by plaintiff in her post-trial briefing, plaintiff worked 541.75 hours during this period, 48.5 of which were overtime hours.

14.     In May 2011, there appears to have been some controversy between plaintiff and defendant Liu about the terms of her employment, which then changed going forward.  In addition, plaintiff appears to have had limited work in July 2011, and while it appears that she

---

[1] In order to simply the calculations required in this case, I have rounded each figure down to the nearest dollar.

may have been paid some amount for work during that month, the terms of her compensation during that month are not ascertainable with any certainty from the evidence before me.

15. In May and June 2011 and again from August 2011 until February 2012, plaintiff was paid $3016 monthly, and defendants did not withhold income taxes.[2] Plaintiff's total compensation for this period – at least, that portion of it that has been proven with any certainty – totaled $28,800 (including taxes paid on her behalf). By my calculation, plaintiff worked 1747.5 hours during this period, 204 of which were overtime hours.

16. There is no documentary evidence of plaintiff's hours and wages during the period of March and April 2012 that would prove an overtime violation. Plaintiff's post-trial submissions (specifically, the damages calculations contained therein) seem to suggest that she logged overtime hours during that period, and her pay during those months suggests that, at least in March 2012, the terms of her employment were unchanged from the period immediately preceding it, when plaintiff was consistently working overtime. However, in the absence of corroborating evidence, I do not include this period in my calculations.

17. From May 2012 onward, the evidence, including plaintiff's own records, does not show that she worked more than 40 hours in any given week or more than 10 hours in any given day during that period.

18. Finally, the parties appear to agree that some portion of plaintiff's compensation was reported on a 1099 basis as a "bonus" – and several of the cancelled checks in evidence bear memo annotations consistent with that notion – but neither party entered evidence concerning the complete extent of any such additional payments.

---

2 For the month of June 2011, the parties' accounts of what plaintiff was paid are inconsistent. I accept defendants' version, as set forth in the L&S payroll journal, because it is more than what plaintiff contends she was paid on the basis of checks actually received. (This, as will be discussed below, benefits plaintiff.)

19. Both parties testified to the existence of a sliding-scale method, taking into account the number of patients that plaintiff treated in a given day, by which plaintiff's pay, or perhaps only her bonus, was calculated. As explained by defendant Liu on the stand, by its terms, it appears to have been a calculation of total compensation that triggered bonus payments if a certain threshold of productivity was reached. I disregard both sides' testimony about this system, however, because there is no documentary evidence in the record to suggest that in reality it was ever adhered to.

## CONCLUSIONS OF LAW

20. Plaintiff contends that defendant AAA is part of a "single enterprise" with defendant L&S for purposes of its threshold exposure to FLSA liability, because both are owned and controlled by defendant Liu, and because plaintiff interacted with both in the course of her employment relationship. See Gonzalez v. El Acajutla Rest., Inc., No. 04 Civ. 1513, 2007 WL 869583, at *7 (E.D.N.Y. Mar. 20, 2007). Defendant's reply brief does not attempt to refute this argument. I therefore accept it and hold that both entities, and defendant Liu, are subject to any liability for the FLSA violations at issue in this case.

21. Plaintiff is not exempt from the FLSA's overtime protections as an "employee employed in a bona fide professional capacity," 29 U.S.C. § 213(a)(1), for either of the two reasons asserted by defendants. The burden to demonstrate exempt status is on defendants. Young v. Cooper Cameron Corp., 586 F.3d 201, 207 (2d Cir. 2009).

22. First, plaintiff is not excluded by the salaried professional exemption. See 29 C.F.R. § 541.300 *et seq*. Even assuming plaintiff's duties were professional in nature, she was not a salaried employee.

23. I construe the FLSA's exempt employee provisions narrowly; "the Supreme Court consistently has interpreted the [FLSA] liberally and afforded its protections exceptionally broad coverage." Chao v. Gotham Registry, Inc., 514 F.3d 280, 285 (2d Cir. 2008).

24. The salaried professional exemption only applies when the employee's compensation is not "subject to reduction because of variations in the quality or quantity of the work performed." Auer v. Robbins, 519 U.S. 452, 455, 117 S. Ct. 905, 908 (1997) (citing regulations). An employee is "subject to" improper deductions in salary when, among other things, there is evidence of an "actual practice of making such deduction." Id. at 461.

25. An employee is not paid on a salary basis "if deductions from h[er] predetermined compensation are made for absences occasioned by the employer or by the operating requirements of the business," in other words, when "the employee is ready, willing, and able to work" and "work is not available." Dingwall v. Friedman Fisher Assocs., P.C., 3 F. Supp. 2d 215, 220 (N.D.N.Y. 1998) (citing regulations) (rejecting salary-basis exemption where employee's salary was temporarily reduced as the result of a shortened workweek during one six-month period).

26. It does appear that plaintiff's base compensation – that is, the portion that was reported on her W-2 – generally was steady from the time she began employment, with the exception of July 2011, until mid-2012. However, the evidence shows that her pay dropped at that point, presumably as a result of some change in her productivity or hours of work. This reduction suggests an "actual practice" of reducing an employee's pay because of variations in the quantity or quality of work performed. Thus, although plaintiff's pay was generally steady, she is not a salaried employee within the meaning of the FLSA.

7

27.     Second, plaintiff is not excluded from the salary-basis requirement under the FLSA's medical practitioner exception, 29 C.F.R. § 541.304.[3]  Section 541.304 applies by its terms to "physicians and other practitioners licensed and practicing in the field of medical science and healing or any of the medical specialties practiced by physicians or practitioners." Id.  In addition to medical doctors, the regulation expressly lists "osteopathic physicians (doctors of osteopathy), podiatrists, dentists (doctors of dental medicine), and optometrists (doctors of optometry or bachelors of science in optometry)."  Id.  Another related provision makes clear that the exception excludes "pharmacists, nurses, therapists, technologists, sanitarians, dietitians, social workers, psychologists, psychometrists, or other professions which service the medical profession."  29 C.F.R. § 541.600(e).

28.     Defendants' argument that a licensed acupuncturist who is not a medical doctor falls within this exception appears to present a question of first impression.  Although there is limited case law interpreting § 541.304 or its predecessor provision, courts have determined that Nurse Practitioners and Physician's Assistants are not within the exception because, despite the similarity of their duties to those of general practitioners, the Department of Labor considers them to "service the medical profession."  Belt v. EmCare, Inc., 444 F.3d 403 (5th Cir. 2006).  Veterinarians, on the other hand, have been held to be within the exception.  Clark v. United Emergency Animal Clinic, Inc., 390 F.3d 1124 (9th Cir. 2004).

29.     Defendants only raised this issue in their post-trial reply brief, and the parties did not enter evidence intended to clearly define the relationship between oriental medicine and the practice of medicine as it is commonly understood in the United States, much less as it is

---

[3] Section 13(a)(1) of the FLSA, discussed above, is a statutory exemption from FLSA overtime requirements. Section 541.304 is a regulatory expansion of the exemption.  In plain terms, while certain kinds of professionals are not protected by the FLSA if they are paid by salary, medical doctors (among others) are not protected by the FLSA no matter how they are paid.

8

understood by the Department of Labor in the context of FLSA-interpretive regulations. The parties do not dispute that a licensed acupuncturist need not be a medical doctor nor hold a doctoral-level degree. Numerous public sources of which I take judicial notice, including those published by the NCCAOM and the State of New York, are consistent with the testimony that I heard in this case. It appears commonly understood within the United States that "oriental medicine" refers to the practice of traditional healing methods, and that although a medical doctor may obtain a certification in acupuncture, a licensed acupuncturist is not necessarily a medical doctor.

30.     Defendants bore the burden of proof on this issue. Defendants' argument essentially rests on the fact that plaintiff treats patients independently, unlike a Nurse Practitioner or Physician's Assistant. But so, I imagine, do many therapists, dietitians, social workers, and psychologists, all of whom are expressly made outside the scope of the regulation. With only one exception, the practitioners who are expressly included within or have been held to fall within § 541.304 are required to hold doctoral-level medical degrees.[4] I do not hold that a doctoral degree is necessarily a requirement of the regulation, but that pattern, among other things, suggests that an acupuncturist is more like one of the independent professionals mentioned in 29 C.F.R. § 541.600(e) than she is like a medical doctor. There is nothing in the record or in defendants' briefing that makes it clear to me that an acupuncturist is not entitled to FLSA protection for the same reasons that medical doctors are not. Mindful of my obligation to construe the FLSA's exemption provisions narrowly, so as to avoid application of the statute in a

---

4 The exception is a bachelor's of science in optometry. Holders of this degree are included within the regulation by its terms, but I am aware of no court decision denying FLSA protection on that basis. In fact, it appears that this degree is not recognized in the case of United States-trained practitioners. See Bureau of Labor Statistics, U.S. Department of Labor, OCCUPATIONAL OUTLOOK HANDBOOK, available at http://www.bls.gov/ooh/healthcare/optometrists.htm (last visited January 22, 2015).

"grudging manner," Chao, 514 F.3d at 285 (quotation omitted), I decline defendants' invitation to be the first court to so hold.

31. Under the FLSA, "no employer shall employ any of h[er] employees . . . for a workweek longer than forty hours unless such employee receives compensation for h[er] employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which [s]he is employed." 29 U.S.C. § 207(a)(1); Chao, 514 F.3d at 285.

32. Determining whether an hourly worker has been compensated in accordance with that provision is straightforward, but when a worker is compensated on some other basis, as here, the Court must determine based on the parties' actual conduct whether plaintiff was compensated at a premium for her overtime hours. For example, where a non-exempt employee is paid a weekly salary, "[u]nless the contracting parties intend and understand the weekly salary [or other non-hourly pay] to include overtime hours at the premium rate, courts do not deem weekly salaries to include the overtime premium for workers regularly logging overtime . . . ." Giles v. City of New York, 41 F. Supp. 2d 308, 317 (S.D.N.Y. 1999).

33. In order to prove a compensable violation of the overtime provision, when an employer has not kept sufficient records of an employee's wages and conditions of employment, an FLSA plaintiff "may submit sufficient evidence from which violations of the [FLSA] and the amount of an award may be reasonably inferred." Reich v. S. New England Telecomms. Corp., 121 F.3d 58, 66 (2d Cir. 1997) (quotation omitted). Plaintiff need only provide "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687, 66 S. Ct. 1187, 1192 (1946), superseded by statute on other grounds, 29 U.S.C. § 216(b). The burden then shifts to the employer to present evidence to "negative the reasonableness of the inference to be drawn

from the employee's evidence." Id. at 687-88. If defendants cannot, "the court may then award damages to the employee, even though the result be only approximate." Id. at 688.

34. Even where the hours worked and compensation received are not proven with certainty, district courts have found FLSA overtime and spread-of-hours violations (and awarded commensurate damages). See Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327 (S.D.N.Y. 2005); Moon v. Kwon, 248 F. Supp. 2d 201, 219 (S.D.N.Y. 2002) (calculating the extent of plaintiff's work, "though necessarily approximate," on the basis of available evidence).

35. New York Labor Law incorporates a similar standard that places even greater burden on the defendant; as a result, a finding of FLSA liability implies state law liability. See Doo Nam Yang, 427 F. Supp. 2d at 337 n.15.

36. Here, although the precise terms of plaintiff's compensation during the relevant periods are difficult to discern with any precision from the record, there is no indication (and indeed, there has been no contention by either party) that it was intended to incorporate an overtime premium. I therefore find that defendants are liable for unpaid overtime under both the FLSA and New York law. What remains is to determine plaintiff's damages, which requires me to calculate the unpaid overtime premium that is appropriate on the basis of the parties' actual course of conduct during the relevant period.

37. As an initial matter, I reject plaintiff's contention that she was ever employed subject to an agreement to be paid $23 or $30 hourly on the basis of her H1-B Visa application. Plaintiff argues that she was a third-party beneficiary of a promise by defendant to the United States Department of Labor regarding what plaintiff would be paid. Even if I discredit defendant Liu's testimony that she was unaware of plaintiff's H1-B application, plaintiff has failed to produce any evidence of a course of performance consistent with such an arrangement.

11

38. Moreover, the idea that an H1-B application, without more, constitutes a contractual obligation between the employer and employee has been considered and rejected by several courts. See, e.g., Shibeshi v. Philander Smith Coll., No. 11 Civ. 00513, 2011 WL 4529455, at *2 (E.D. Ark. Sept. 30, 2011), aff'd, 467 F. App'x 544 (8th Cir. 2012); accord Panwar v. Access Therapies, Inc., 975 F. Supp. 2d 948, 960 (S.D. Ind. 2013) (citing id.) ("Any claims based upon allegations that the Defendants violated the terms of the [H1-B visa] Application would have to be addressed administratively with the DOL."); see also Rao v. Covansys Corp., No. 06 Civ. 5451, 2007 WL 3232492, at *3-4 (N.D. Ill. Nov. 1, 2007) (holding that H1-B visa applicant was not third-party beneficiary of any contractual obligation in part because employer's purported promise to abide by immigration laws was not consideration).

39. Plaintiff has argued no alternative basis for recovery. Nevertheless, where the evidence shows that plaintiff worked more than 40 hours per week, that she is not exempt, and that her compensation did not include any premium for those additional hours, her employer has violated the FLSA and "overtime damages must be calculated somehow . . . ." Klein v. Torrey Point Grp., LLC, 979 F. Supp. 2d 417, 438 (S.D.N.Y. 2013) (holding that fluctuating workweek method, discussed below, is appropriate way to determine damages in the case of a misclassified employee). Klein involved a clear agreement "that a flat weekly wage would compensate the employee for all his hours, no matter their number," id., but I see no reason not to apply its logic to a case where, as here, some less predictable form of compensation was apparently tendered and accepted over the course of about two years with no proven link to hours or productivity. I have therefore calculated those damages to which plaintiff's testimony and documentary evidence readily shows her to be entitled as a "just and reasonable inference."

12

40. On the basis of the available evidence, the most appropriate method of calculating plaintiff's damages is the "fluctuating workweek method" of overtime calculation. The fluctuating workweek method is the approved method for arriving at the regular hourly rate for overtime purposes in situations where an employee has a "mutual understanding with h[er] employer that [s]he will receive a fixed amount as straight-time pay for whatever hours [s]he is called upon to work in a workweek, whether few or many . . . ." Ayers v. SGS Control Servs., Inc., No. 03-cv-9078, 2007 WL 646326, at *8 (S.D.N.Y. Feb. 27, 2007).

41. To calculate the overtime premium due to plaintiff, "the regular rate of the employee" for a given week "is determined by dividing the number of hours worked in the workweek into the amount of the salary to obtain the applicable hourly rate for the week. Payment for overtime hours at one-half such rate in addition to the salary satisfies the overtime pay requirement . . . ." 29 C.F.R. § 778.114.

42. I acknowledge that, generally, "an employer must demonstrate that the employer and the employee had a clear, mutual understanding that the employer w[ould] pay the employee the fixed weekly salary regardless of the hours worked" in order to apply the fluctuating workweek method. Dingwall v. Friedman Fisher Assocs., P.C., 3 F. Supp. 2d 215, 221 (N.D.N.Y. 1998). But that rule exists to prevent employers from using the method *ex ante* when another method of calculation more favorable to the employee is available. Here, in contrast, fluctuating workweek appears to be the only method by which I can make a principled calculation of damages on the facts that were put before me. In addition, because no weekly pay amounts were put before me, the damages calculations that follow are derived not from weekly pay figures, but from an average of plaintiff's hours and compensation during the three distinct periods throughout which her monthly rate was generally steady.

13

43. I therefore hold, in light of the foregoing principles and of the findings set forth above, that plaintiff's regular rate of pay in November and December 2010 was $12.07 per hour, and that she is entitled to $159.88 in unpaid overtime premiums for that period; her regular rate of pay from February through April 2011 was $24.38 per hour, and that she is entitled to $591.31 in unpaid overtime premiums for that period; and her regular rate of pay from May 2011 through February 2012 was $16.48 per hour, and that she is entitled to $1681.03 in unpaid overtime premiums for that period.

44. Finally, I reject defendants' contention that any overtime hours worked by plaintiff are not compensable under the FLSA because they were not authorized in advance. To "employ" a person under the FLSA means to "suffer or permit" them to work. 29 U.S.C. § 203(g). It is presumed that an employer who knows that an employee is working can stop the employee from working. "Where this presumption holds, an employer who knows of an employee's work may be held to suffer or permit that work." Chao, 514 F.3d at 290.

45. Plaintiff's New York law spread-of-hours claim is limited to two days on which her self-kept records reflect more than 10 hours of work in one day. Under New York law, employers must pay one hour's pay at the basic minimum hourly wage rate . . . for any day in which [*inter alia*] the spread of hours [*i.e.*, the interval between the beginning and end of an employee's workday] exceeds 10 hours." Berrios v. Nicholas Zito Racing Stable, Inc., 849 F. Supp. 2d 372, 389 (E.D.N.Y. 2012). Plaintiff's recovery is to be increased by the amount of two hours at the New York minimum wage rate.

46. Plaintiff has failed to prove that defendants' non-payment of overtime was willful. "An employer willfully violates the FLSA when it either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the Act," and the burden is on plaintiff to

14

make that showing. Young, 586 F.3d at 207 (finding willfulness in light of evidence that the defendant deliberately gave the plaintiff an inaccurate job title to avoid paying overtime). Even if an employer is negligent in assuming that an employee is exempt from FLSA requirements, but has in fact misclassified her, a resulting violation is not willful. See Berrios, 849 F. Supp. 2d at 391 (collecting cases). Here, in light of the lack of definite authority on the applicability of the medical practitioner exemption, discussed above, I do not find that plaintiff has met her burden of proving that defendants acted recklessly or worse.

47. Defendant's lack of willfulness matters mainly because plaintiff seeks liquidated damages. Liquidated damages equal to the amount of compensatory damages are the "norm," subject to my discretion to reduce them, under the FLSA. Under New York law, on the other hand, liquidated damages require a showing of willfulness. See Doo Nam Yang, 427 F. Supp. 2d at 341-42. Relatedly, the FLSA statute of limitations is two years for non-willful violations, and the New York statute of limitations is six years, both accruing on the date of a given disputed paycheck. Id. at 337-38. I therefore find that plaintiff is entitled to liquidated damages only on unpaid overtime accruing after February 17, 2012. Because I have divided plaintiff's employment into distinct periods for purposes of calculating her damages – without the benefit of either party having given me a legally viable calculation – I decline in my discretion to further interpolate in order to avoid a slight decrease in the award of liquidated damages. I therefore award plaintiff $1681.03 in liquidated damages, representing a doubling of damages for the last of the three periods of employment on which I have based my calculations.

15

## CONCLUSION

The Clerk of the Court is directed enter judgment in favor of plaintiff and against defendants, jointly and severally, in the amount of $4,113.25 on her overtime claim, plus $17.50 on her spread-of-hours claim, for a total of $4130.75.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
       January 23, 2015